AMELIA ALBERT

*v.*

EMILY B. R. HAEBERLY et al.

[Argued November 1st, 1905.   Decided May 28th, 1906.]

1. Where an absolute gift, without reservation of power to revoke, is made by a dependent member of the family to the dominant member, without any valuable consideration proceeding to the donor, the burden of proof is laid upon the donee to show that the donor had the benefit of competent and independent advice explaining the effect of the challenged transaction.

2. Where the lawyer who drew the transfer of property from the dependent member of the family, and conducted the business incident to its execution, had for years previously been employed as counsel for the dominant member (who was the donee) ; had received his instructions for preparing the transfer in the presence of the husband of the donee, and in the matter of the transfer is not shown to have acted independently for the protection and advantage of the donor, the burden of proof cast upon the donor is not successfully carried.

3. This case held to be controlled by the decision of the court of errors and appeals in the case of *Albert* v. *Haeberly, 68 N. J. Eq. (2 Robb.) 664.*

On final hearing on bill, answer and proofs.

*Messrs. Bourgeois & Sooy,* for the complainant.

*Mr. William I. Garrison,* for the defendants.

The cause was argued by Mr. Garrison for the defendants.

GREY, V. C. (orally).

I do not care to hear from complainant's counsel, because I am convinced that this case ought to be settled in the way I am about to determine it.   I have listened with interest to the defendants' counsel to hear any suggestion why this cause is not substantially controlled by the decision of the court of errors and

appeals in the case of *Albert* v. *Haeberly,* reported in *68 N. J. Eq. (2 Robb.) 664.* The circumstances in this case differ very slightly from those which were before that court in that judgment. The present matter is the challenge by the complainant of the validity of a release in writing, made by her on October 16th, 1902, to Mr. Charles Wells, an attorney-at-law of the State of Pennsylvania, of what was called a trust fund in his hands, with a direction to deliver the *corpus* of that fund to the defendant Mrs. Haeberly.

The circumstances under which this paper was made are as follows: William Robinson was the father of Lena and Amelia Robinson by a wife who died. He then married the defendant (now Mrs. Haeberly), who bore him one child, named Edna. William Robinson died intestate, leaving at his death his three children, Amelia Robinson, the complainant in this suit; Lena Robinson, her sister of the whole blood, and Edna Robinson, her sister of the half blood, an infant about two years old. Edna Robinson died about two years after the death of her father. There was litigation in the State of Pennsylvania between the representatives of the estate of William Robinson and his brothers, Charles and Augustus, touching the settlement of a brewery property, which had been held in partnership between them, which resulted in the final establishment of the right of William to one-third. The property consisted of both real and personal estate, and was of such a character that there was some uncertainty as to what part was realty and what personalty. Under the law of Pennsylvania, as it has been proven here, the real estate part of William Robinson's estate descended, on his death intestate, to his children, one of whom was his daughter Edna. Edna's portion, upon her death, an infant, and of course intestate, under the law of the State of Pennsylvania, as to the real estate, passed to her mother for life, and to her half-sisters, Lena and Amelia, in fee. The controversy in this case arises touching the transfer, or claimed transfer, on October 16th, 1902, by Lena and Amelia, to their stepmother, the defendant Mrs. Haeberly, of their reversion in the fund arising from the sale of the real estate to the extent of Edna's share, the fee in which came to them on Edna's death. There has been, as has

been stated, a considerable amount of flat contradiction in the testimony in this case. This is true, however, only of minor matters, for as to the essentials which I deem to be controlling the decision of the cause there is no dispute whatever. In matters of family contention it is not at all unusual to have members of the family of creditable appearance give testimony against each other which is directly contradictory. This is, to a certain extent, true in this case, but touching the important phases settled by the court of errors and appeals, the evidence presented by both sides is in harmony.

In the court of errors and appeals case above cited the contention was between the complainant, Mrs. Amelia Robinson Albert, and her stepmother, Mrs. Haeberly, who is the principal defendant in this suit. The complainant sought to set aside a conveyance of her share of her father's real estate, which Mrs. Haeberly, while Amelia was a member of her family, in December, 1902, had induced her to make to herself (Mrs. Haeberly), without any independent, uninfluenced advice on the subject, by a deed of gift which contained no power of revocation. The court of errors and appeals held that the circumstances proven showed that Amelia, though of age, was one of the family of which Mrs. Haeberly was the head and dominant member; that Amelia lived in an atmosphere of trust and confidence in Mrs. Haeberly; that it was an inequitable advantage taken of Amelia to accept from her an irrevocable conveyance of her lands, given without competent and independent advice, and without valuable consideration passing to her. On these grounds the court of errors and appeals declared Amelia's conveyance of her lands, made in December, 1902, to Mrs. Haeberly, to be void.

In the case at bar Amelia seeks to set aside the transfer of her interest in the principal of her sister Edna's share of the lands, which Amelia made to Mrs. Haeberly on October 16th, 1902.

Amelia had come of age in August, 1902.

As above stated, it is affirmatively proven by both sides that on October 16th, 1902, she was a member of Mrs. Haeberly's household. At that time Amelia was living, as she had for more than ten years, in entire harmony with her stepmother, accepting and obeying orders from Mrs. Haeberly as the head of the

family. All the evidence tends to prove that Mrs. Haeberly was a positive woman, who understood and appreciated the fact that wealth was a means of power. She had conducted the law suit against her first husband's brothers, Charles and Augustus Robinson, for several years, and had finally won it. While her stepdaughters were under age she received $1,000 a year from the guardian of each of them for their maintenance and education. Amelia says she was for years kept in ignorance of the fact that she had an independent fortune. In the settlement of William Robinson's estate, his widow (who had now become Mrs. Haeberly) secured for herself, as against her stepdaughters, every element of value to which her status as widow entitled her. Her personal appearance and bearing when she was giving her testimony accord with all the evidence which indicates that in the family she was easily "monarch of all she surveyed." A claim that she specially considered her stepdaughters was based on her assent to the correction of a clerical mistake in the settlement of the estate, which was only discovered after it had passed unnoticed through several courts. This correction was a matter of the simplest honesty, about equivalent to the return of too large a sum of money given in change. Nothing in this incident or in the case lessens the clear proof that Mrs. Haeberly dominated the family.

On the other hand, Amelia, who was on the stand, is plainly wholly unacquainted with the modes in which business is managed. She did not know the meaning of the simplest legal language, or of words ordinarily used in the conduct of business. She is fairly intelligent and well educated, but on lines quite remote from bargaining, trading or managing business.

It is quite evident that in October, 1902, she was entirely under the tutelage and control of her stepmother, Mrs. Haeberly. The defendant Mr. Wells, the Pennsylvania lawyer, who had conducted the settlement of the William Robinson estate, and who had in his hands the Edna Robinson share of the fund which proceeded from the sale of the realty, testifies without hesitation that Mrs. Haeberly and her stepdaughters constituted a family in which harmonious affection was the controlling feeling, to a degree that was distinctly noticeable.

This condition and relation of the parties to this suit continued after Amelia came of age in August, 1902, and until the spring and early summer of 1903. There was no change in the family situation when Amelia came to her majority. There was then neither suggestion nor thought that she should be emancipated and depend upon herself. On October 16th, 1905, she was still the submissive and obedient stepdaughter, and Mrs. Haeberly was the commanding head of the house.

The court of errors and appeals, dealing with this element, declared that under such circumstances the mere arrival of Amelia at the age of twenty-one years was of very little importance; that "the relationship existing between a loving parent and child is universally conceded to be one of trust and confidence, and during the youth of the child, and even after the child reaches her majority, when she continues to be a member of the parent's family, the parent ordinarily occupies the dominant position."

The court goes on to say, as has been decided in many cases, that where such a relationship exists, an irrevocable gift, made by one of the subordinate members of the family to the parent or other member who dominates the situation, must be characterized by certain incidents, and that the burden of proof to show that it was so characterized is cast upon the recipient of the benefits of the transaction. Mrs. Haeberly has received the benefit of this gift by the execution of the instrument, a copy of which is annexed to the bill of complaint. With that she must take the burden of showing that the incidents which are required by the law to make such transactions valid happened at the time when the transaction took place.

This case varies slightly from the other in the attempt here made to show that the young lady acted with the benefit of counsel. It is claimed that Mr. Wells was her counsel in this transaction. It is, however, quite clear that the relation of Mr. Wells to the complainant in making the settlement of October 16th, 1902, was not (within the meaning of the decision cited in the previous case) that of counsel for Amelia. Up to that time Mr. Wells had never been her counsel. He had previously acted as counsel for the estate, in which the active persons em-

ploying him were Mrs. Haeberly and the guardians of Amelia and her sister. These young ladies might have protested and objected, and done all they could to prevent the employment of Mr. Wells, and their opposition would have been absolutely useless, for Mrs. Haeberly and the guardians might have chosen him as counsel in spite of all that Amelia and her sister might do. The fact of his employment to act for the estate did not put Mr. Wells in the attitude which the court of errors and appeals declares the counsel of a junior and dependent member of a family should occupy in order to sustain a gift made to the dominant and controlling member of the family. Mr. Wells admitted that he had never, prior to this transaction, been independently employed by Miss Amelia Robinson to advise her and care for her interests.

The essence of the decision of the court of errors and appeals is that, under the circumstances named, the dependent member of the family has a right to rely on the care and protection which have heretofore saved her from improvident and ill-advised action, and that the making of any irrevocable gift of large value to the dominant member of the family requires that the donor shall have the benefit of the counsel and advice of an experienced person, whose attitude is that of independent devotion to her advantage.

In this case it is clear that there was no reason for Amelia's absolute transfer of $9,000 or $10,000 to her mother, except the family feeling of love and affection, and it is exactly that situation contemplated by the court of errors and appeals when it declared that a gift made under such circumstances is voidable at the choice of the donor, unless when she made the gift she had the benefit of competent and independent advice.

Mr. Wells testifies that the complainant gave him his instructions to prepare the challenged instrument, but admits that Mr. Haeberly, the husband of the donee, was present when they were given. Mr. Wells had long served as the family adviser, and was in all probability selected by Mrs. Haeberly. He had successfully conducted a hard-fought litigation for her. He says he made no charge for his services at Atlantic City in arranging the settlement and transfer of the complainant's interest in

Edna's share to Mrs. Haeberly. He certainly did not feel himself to be in the position of an independent adviser of the donor-complainant, looking solely to her interests in the matter. The transaction involved the passage of an interest which the donor had never had in possession. The challenged instrument is not expressed in the form of a gift to Mrs. Haeberly, but in that of a statement of account with Mr. Wells, as trustee, and an agreement that all the property should be delivered over to Mrs. Haeberly, and that thereupon Mr. Wells should be discharged.

At the time it was executed, the trustee, Mr. Wells, had in his hands $19,000 (and a fraction) of securities, notes and other evidences of value, the result of the sale of real estate, which had been divided off and ascertained to be the portion due to Edna Robinson. In Edna's share (dealing with it as real estate), under the law of Pennsylvania (which has been proven here), the mother, Mrs. Haeberly, had a life interest in the income, and Edna's two sisters, the complainant and Lena, had a right to the payment of the principal of the fund, on Mrs. Haeberly's death. The effect of the disputed transfer (a copy of which is annexed to the bill) was to end the trust, as to the fund in the hands of Mr. Wells, and to empower him immediately to deliver over the principal of it to Mrs. Haeberly. This he has done, as she admits. Part of the fund was an evidence of debt with an ascertained value, part of it was in stock, which was delivered in kind. A part of the stock, one hundred and twenty-four shares of the Central Brewing Company, has since been returned to the complainant.

While the legal effect of the instrument is to transfer to Mrs. Hacberly the complainant's reversion in Edna's share of the real estate, that effect is not obvious on the face of the instrument. There was therefore the more reason that the complainant should have had competent advice from someone acting in her interest before executing it. She says she was entirely misled, and did not understand that she was making to her step-mother an absolute gift of the $9,000 or $10,000 which constituted the principal of the fund in Mr. Wells' hands.

In my view the elements referred to in the opinion of the court of errors and appeals in the previous case are all here

present:    An absolute gift, without reservation of power to revoke, made by a dependent member of a family to the dominant member, without any valuable consideration proceeding to the donor, and without the donor's having the benefit of competent and independent advice explaining the effect of the challenged instrument.    In such cases the gift is voidable at the option of the donor.

The accuracy and fairness of Mr. Wells' statement of account as between himself and the complainant, touching the moneys in his hands, has not been attacked by the complainant, either in the proofs or in argument.    The whole case has been made to turn upon the efficiency of the transaction as a gift to Mrs. Haeberly.

I feel constrained, under the rulings of the court of errors and appeals, to hold that the settlement release of October 16th, 1902, so far as it operated as a gift of the share of the complainant to her stepmother, the defendant Mrs. Haeberly, must be declared to be invalid.

Under the peculiar circumstances of this case, the defendant Mrs. Haeberly being entitled to the income of the fund during her life, there can be no decree for the delivery to the complainant of her share of the principal of the fund, for she is not presently entitled to have possession of it.    There should be a decree that Amelia's portion of the fund be paid to a trustee, who should, I think, be nominated and appointed in this suit, to hold upon trusts which accord with the interests of the life tenant and of Amelia, the holder of the reversion.    I will not name the trustee at this time, because I think his selection should be the subject-matter of agreement between the parties, if that be possible.    The defendant Mrs. Haeberly appears to have received from Mr. Wells, and to have, the whole of the fund.    She will be directed to deliver to the trustee the portion of the fund which may be in kind, and to pay in money such additional amount as may be necessary to make the fund good as to the share of the complainant, Mrs. Albert, formerly Amelia Robinson.    As none of the fund remains in the hands of the defendant Wells, and his good faith in accounting for it and paying it over are not impugned, there will be no decree that he pay any of it.

My impression is that no costs should go against Mr. Wells, because the litigation has been carried on in the interest of Mrs. Haeberly, and the contest has been made by her. The decree should be that she pay costs. As for Mr. Wells' claim to have costs against the complainant, my reading of his answer is that he did not content himself with defending his own position as trustee under the release and transfer, but that he has sought to aid Mrs. Haeberly in the maintaining of the validity of the transfer to her. I will not pass finally upon this matter, but before I sign any decree I will examine Mr. Wells' answer. If he was in his pleading an active litigant, and is defeated, I do not think I ought to allow him costs.